2006 ND 242

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Daniel MYERS, Defendant and Appellant.**

No. 20050368.

Supreme Court of North Dakota.

Nov. 28, 2006.

Rehearing Denied Dec. 13, 2006.

Cynthia Mae Feland, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Benjamin C. Pulkrabek, Mandan, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Daniel Myers appealed from a judgment entered after a jury found him guilty of three drug-related offenses. We conclude the prosecutor's closing argument did not violate Myers's right against self-incrimination, the district court's failure to admonish the jury before a recess was not reversible error, and there was sufficient evidence to convict Myers of the three offenses. We affirm.

I

[¶ 2] In late March 2003, Bismarck police were investigating a drug transaction based upon information received from a confidential informant. The information concerned a shipment of methamphetamine from Minot to a motel in Bismarck. Police also had information about two individuals who were recipients of the methamphetamine. Two individuals were apprehended at the Bismarck motel, but a third individual eluded police. Police believed the third individual was Myers. Police investigators distributed flyers with Myers's picture to several local motels where they suspected Myers would be staying.

[¶ 3] Subsequently, Bismarck police received a telephone call from a manager at a Bismarck motel, informing them that Myers was staying in a room at that motel. Relying upon a previously obtained search

warrant and the information from the manager that Myers was staying at the Bismarck motel, police sought and obtained a search warrant for room 336 at that motel. Police officers and a motel maintenance supervisor were proceeding to room 336 when they encountered an individual in the stairway leading up to the third floor. The maintenance supervisor identified the individual as Myers. A police officer stopped the individual and confirmed he was Myers. The officer then handcuffed Myers and escorted him to room 336.

[¶ 4] As the police officer and Myers walked to room 336, Myers told the officer he wanted to cooperate because, according to the officer, Meyers indicated he had "a lot of things hanging over his head." The officer informed Myers they would talk at the police department after the room was searched. Upon entering room 336, law enforcement officers found Myers's wife in the room. A search of the room yielded marijuana and various drug paraphernalia, in addition to approximately $866 in cash found on Myers's wife. Police officers also observed suitcases and both men's and women's clothing, including swim suits, in the room.

[¶ 5] Myers and his wife were taken to the Bismarck police department and interviewed in separate rooms. During Myers's interview, he was given his Miranda rights, including his right to remain silent, and he again indicated that he wanted to cooperate with the police. Myers provided information regarding two drug deals and individuals involved with those drug deals. Myers was charged with possession of marijuana with intent to deliver and two counts of possession of drug paraphernalia. A jury convicted Myers on all counts.

## II

[¶ 6] Myers argues the prosecutor's reference to his post-arrest silence in closing argument violated his right against self-incrimination.

[¶ 7] It is a fundamental principle of constitutional law that a prosecutor may not comment on a defendant's failure to testify in a criminal case. *State v. His Chase*, 531 N.W.2d 271, 273 (N.D.1995); *State v. Flohr*, 310 N.W.2d 735, 736 (N.D. 1981). "A comment on the silence of a defendant is an improper comment on the right to remain silent in violation of the Fifth and Fourteenth Amendments of the [United States] Constitution." *State v. Ebach*, 1999 ND 5, ¶ 15, 589 N.W.2d 566. *See also* N.D. Const. art. I, § 12; N.D.C.C. § 29-21-11. This Court reviews de novo a claim of a constitutional rights violation. *State v. Keyes*, 2000 ND 83, ¶ 9, 609 N.W.2d 428.

[¶ 8] We have also explained a district court's discretion in controlling closing argument.

> In controlling the scope of closing argument, the district court is vested with discretion, and absent a clear showing of an abuse of discretion, we will not reverse on grounds the prosecutor exceeded the scope of permissible closing argument. Unless the error is fundamental, a defendant must demonstrate a prosecutor's comments during closing argument were improper and prejudicial. In order to be prejudicial, the improper closing argument must have "stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the evidence."

*State v. Schmidkunz*, 2006 ND 192, ¶ 7, 721 N.W.2d 387 (citations omitted). Argument by counsel must be limited to the

facts in evidence and the inferences that properly flow from those facts. *Ebach*, 1999 ND 5, ¶ 10, 589 N.W.2d 566; *City of Williston v. Hegstad*, 1997 ND 56, ¶ 8, 562 N.W.2d 91. Generally, where a prosecutor's statements have been improper, the appropriate remedy is a mistrial rather than dismissal. *His Chase*, 531 N.W.2d at 273; *State v. Nordquist*, 309 N.W.2d 109, 119 (N.D.1981).

[¶ 9] Here, the prosecutor stated in her closing argument:

> Well there is a definition in the instructions that you were given of possession and possession is in two forms. Actual possession meaning we found this on his person, which is not the case in this particular instance, or constructive possession, meaning he has access and ability to utilize this particular piece of paraphernalia. Did he? Absolutely. How do we know that? It was found in the motel room, not found on [Myers's wife], but found in the motel room. The same motel room that is connected with Mr. Myers. How do we know it's connected with Mr. Myers—because when the maintenance man pointed out yep, that's the guy from that room—we had that testimony through the officer. We have that. What else do we have? We have male clothing in the room, so is there any question that Mr. Myers is associated with that. *Do we have any statements at this point where Mr. Myers said oh no, I have nothing to do with this room, I'm only a mere visitor? No.* In addition we have him making all kinds of comments about drug activities, do we not? Absolutely. So is there really any reasonable doubt that he had the ability to utilize that? No. (Emphasis added.)

[¶ 10] Myers's trial counsel objected to the statement in a subsequent exchange with the court:

> MR. GLASS: I don't know if this is appropriate or not but I'm going to object to part of her closing where she talks about Mr. Myers not testifying here today. She said he testified that he wasn't at the hotel. Did he come up here and tell us he wasn't at the hotel?
>
> MS. FELAND: No, I didn't say that. I didn't say that he testified, I said he didn't tell the officers.
>
> THE COURT: Well regardless, you can—I'll allow the objection and you can preserve it for the record.
>
> MR. GLASS: Pardon me?
>
> THE COURT: I said I'll allow you to object to the comment. All right. Go ahead Mr. Glass.
>
> (In open court)
>
> MR. GLASS: Yes, Your Honor. I'd like to object to the part of Ms. Feland's closing statement where she referred to Mr. Myers not testifying here today. He has the absolute right not to testify.
>
> MS. FELAND: State's position is that wasn't the reference to the comment. The comment was that he didn't give that information to the officers when he was questioned.
>
> THE COURT: I recall you saying something about him not denying being in the hotel room or whatever. I don't recall if you used the word testified or not. If in fact Ms. Feland did use that term, you are to disregard it. As I'm going to instruct you shortly, the defendant does have no burden of proof in this case, has an absolute right not to testify and you are not to draw any inferences or conclusions from that, so if Ms. Feland did say that, you are to ignore that. Mr. Glass, is that acceptable?
>
> MR. GLASS: Thank you, Your Honor.

[¶ 11] Myers asserts that when the prosecutor made the statement during

closing argument, the prosecutor knew Myers had not testified, the time for Myers to testify had passed, and the testimony by the police officers established Myers had been given his Miranda rights. Relying on *Hegstad*, 1997 ND 56, 562 N.W.2d 91, Myers argues the prosecutor's statement is reversible error because it was made after he elected not to testify and implied criticism because he did not testify.

[¶ 12] In *Hegstad*, at ¶¶ 9–10, this Court concluded that a prosecutor's reference in closing argument to the defendant's silence after he had received his Miranda warnings, or more generally to the defendant's failure to come forward with his version of events at any time before trial, violated the defendant's right to due process. In concluding the district court abused its discretion and the errors were not harmless beyond a reasonable doubt, we focused on the prosecutor's closing argument, which coupled improper comment on the defendant's post-arrest silence after receiving Miranda warnings with improper argument that a police officer's job was to tell the truth. *Id.* at ¶ 14. Myers's reliance on *Hegstad*, however, is misplaced.

[¶ 13] In this case, Myers has taken the prosecutor's statement out of context. *See, e.g., Ebach*, 1999 ND 5, ¶ 15, 589 N.W.2d 566 (prosecutor's statement merely drew attention to the inconsistency of accounts of what happened and was not a statement regarding defendant's silence before testifying). Rather than commenting on Myers's failure to testify at trial or exercising a right to remain silent, the prosecutor's statement refers to Myers's failure in his voluntary assertions to law enforcement before being given Miranda warnings to deny that it was his motel room where the drugs and drug paraphernalia were found.

■ [¶ 14] We conclude the prosecutor's statement was a comment about the evidence and was not an improper reference to Myers's silence. We therefore conclude the prosecutor's statement did not violate Myers's constitutional rights. Moreover, the district court instructed the jury to ignore the prosecutor's statement. We conclude the court did not abuse its discretion in addressing Myers's objection and the prosecutor's statement does not require reversal.

### III

■ [¶ 15] Myers argues the district court committed reversible error by failing to admonish the jury before a ten-minute recess, as required by N.D.C.C. § 29–21–28, which provides:

> The jurors also, at each adjournment of the court, whether permitted to separate or required to be kept in charge of officers, must be admonished by the court that it is their duty not to converse among themselves nor with anyone else on any subject connected with the trial, nor to form or express any opinion thereon, until the case is finally submitted to them.

At the close of the prosecution's case, the following exchange took place:

> MS. FELAND: State rests, Your Honor.
>
> THE COURT: All right. Mr. Glass.
>
> MR. GLASS: Could I have a five minute recess, Your Honor?
>
> THE COURT: Sure. Why don't we make it ten.
>
> (2:10 p.m.—reconvened in open court with all parties present).

■ [¶ 16] The State relies upon *State v. West*, 57 N.D. 652, 654, 223 N.W. 705, 706 (1929), for the proposition that a temporary cessation of proceedings for

purpose of hearing a motion is not an "adjournment" within the law requiring admonishment. Our more recent decisions, however, suggest the jury should be admonished before all breaks, even if in a short-form admonition referring back to a full admonition. *See State v. Olson,* 274 N.W.2d 190, 191 (N.D.1978) (no prejudice to defendant where short-form admonition was given and defendant failed to object, despite lack of full admonition in the record); *State v. Julson,* 202 N.W.2d 145, 155–56 (N.D.1972) (better practice was to repeat full admonition at each adjournment, but short-form admonition was not prejudicial to defendant). However, this Court generally will not consider issues that a defendant has failed to bring to the attention of the district court. *State v. Brown,* 420 N.W.2d 5, 7 (N.D.1988) (refusing to consider failure of trial court to admonish jury prior to a brief recess, citing *State v. Ronngren,* 361 N.W.2d 224, 231 (N.D.1985) (issue not raised or considered in the district court cannot be raised for the first time on appeal)).

[¶ 17] Here, although the district court did not admonish the jury before a brief recess, the court had admonished the jury prior to an earlier lunch break. While even a short-form admonition would have been appropriate, Myers did not object to district court's failure to admonish the jury before the recess, and he has not claimed or demonstrated any prejudice. *See His Chase,* 531 N.W.2d at 273–74. Under Rule 52(a), N.D.R.Crim.P., any error, defect, irregularity or variance that does not affect substantial rights must be disregarded. We conclude the district court's failure to admonish the jury before the recess was not reversible error.

## IV

[¶ 18] Myers argues there is insufficient evidence to support his convictions.

[¶ 19] This Court has previously outlined our standard of review for challenges to the sufficiency of the evidence:

In an appeal challenging the sufficiency of the evidence, we look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses. A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts. A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt. Moreover, a jury may find a defendant guilty even though evidence exists which, if believed, could lead to a not guilty verdict.

*State v. Bertram,* 2006 ND 10, ¶ 5, 708 N.W.2d 913 (quoting *State v. Noorlun,* 2005 ND 189, ¶ 20, 705 N.W.2d 819 (citations omitted)).

[¶ 20] Myers contends this case consists of circumstantial evidence and according to the witnesses testifying at trial, he was never actually seen in the motel room where the drugs and drug paraphernalia were found. Myers further asserts that even if a jury could find he was in the motel room, there was no evidence he ever possessed the money associated with the drug transaction and there was no evi-

dence he was ever in possession of the drugs with an intent to deliver or in possession of the drug paraphernalia.

[¶ 21] Testimony from police officers established sufficient corroborating evidence connecting Myers to the delivery of drugs and to the drug paraphernalia. Police officers testified that a search warrant was obtained for Myers's motel room based upon information from the motel manager. There was evidence Myers had rented the motel room under a fictitious name, and Myers was detained in the stairway leading up to the floor where his room was located. Upon entering the room, Myers's wife and suitcases with both men's and women's clothing were found in the room. Officers discovered $866 on Myers's wife.

[¶ 22] During the search of the motel room, officers discovered a large bag containing four smaller baggies of marijuana, tin foil with burn marks, a scale with powdery residue, two small packs of baggies, a box of sandwich bags, a roll of tin foil, and two pen tubes with white residue. Testimony was presented that the baggies were sent to the state laboratory for testing which confirmed presence of cannabis or marijuana and, further, that the quantities of marijuana recovered from the motel room were consistent with the quantity sold on the street and were inconsistent with possession for personal use. Additionally, there was evidence the pen tubes tested positive for methamphetamine at the state laboratory.

[¶ 23] An officer testified that the amount of money found in combination with the scale, baggies, and individually wrapped marijuana, indicated both consumption of and dealing in narcotics.

Moreover, after waiving his Miranda rights, Myers provided information to the arresting officers about two other simultaneous drug deals. An officer also testified he observed a recorded telephone call Myers made to another individual in which Myers indicated that some of the methamphetamine belonged to Myers. An officer also testified, "[Myers] indicated at that time that the money we had taken from him, the $866, really belonged to [another individual] for the marijuana that he had received."

[¶ 24] From our review of the record, Myers has failed to demonstrate that no rational fact finder could find him guilty beyond a reasonable doubt of possession of marijuana with intent to deliver and two counts of possession of drug paraphernalia. Viewing the evidence in the light most favorable to the jury verdict, we conclude sufficient circumstantial evidence existed for the jury to find Myers guilty of the charged offenses. We therefore affirm Myers's convictions.

V

[¶ 25] The district court judgment is affirmed.

[¶ 26] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.